COMMONWEALTH *vs.* CHARLES C. ADAMS.

Suffolk.    November 27, 1893. — January 3, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Implements of Gaming — Testimony of Expert — Room used as common Gambling Place.*

Any article, utensil, or appliance ordinarily used in playing an unlawful game, although not indispensable, is an implement of gaming within the meaning of Pub. Sts. c. 99, § 10, as amended by St. 1887, c. 448, § 2.

On a complaint for being present in a place resorted to for gaming and where gambling implements were found, a witness may testify to his special knowledge derived from playing the game more than one thousand times during a period of ten years, although the last occasion was more than a year before the trial, and there had since been changes and alterations in the game of which the witness knew only by hearsay; and even if he testified on the strength of information which he had not personally verified, such testimony might be admissible.

A room, on the door of which is the name of a club, which contains a blackboard devoted to "policy," and in which all business stops whenever an officer appears, and in which on his visits are found the implements ordinarily used in playing policy, may well be found to be a common gambling place.

BARKER, J. The defendant was convicted under Pub. Sts. c. 99, § 10, as amended by St. 1887, c. 448, § 2, of being present in a common gaming-house when gaming implements were found there. He contends that the presiding justice should have ruled that, as matter of law, the furniture, blackboard, sheets, manifold book, and policy slips found in the room when he was arrested were not implements of gaming within the meaning of the statute, because not essential in the game which the evidence tended to show was played there. But if an article is ordinarily used in playing an unlawful game, it may be an implement of that game within the meaning of the statute, although the game can be conducted without it. Neither the fact that the implement is susceptible of a lawful use, as in the case of the table, blackboard, or manifold book, nor the fact that the game can be played without its use, as in the case of the policy slip, makes it as matter of law impossible that the article should be an implement. If, as the game is actually carried on, the utensil is a material instrument in ascertaining whether the player shall win or lose, it is an implement of gaming.

The defendant relies on the case of *Coolidge* v. *Choate*, 11 Met. 79, in which it was held that game-cocks were not such implements within the meaning of a penal statute, (Rev. Sts. c. 50, § 19,) authorizing officers of the law to enter common gaming-houses and arrest all persons there found playing, and to take into custody " all the implements of gaming " ; and he cites the definition of the word " implements " there quoted, contending from it that only those things are implements of gaming without which the game cannot be carried on.    The first clause of that definition, " Things necessary in any trade or mystery, without which the work cannot be performed," declares that things necessary to an act are implements ; but that this statement does not exhaust the class of implements is evident from the rest of the quotation, " also the furniture of a house, as all household goods, implements, etc.   And implements of household are tables, presses, bedsteads, and the like," — meaning evidently that articles ordinarily used, as well as those necessarily used, in the performance of an act are implements of the act.    And it was so held in *Locke* v. *Motley*, 2 Gray, 265, where the term "fishing implement" was construed to include " the use of lines, seines, spears, nets, and any of the ordinary and usual modes of catching fish in rivers or bays." In *Coolidge* v. *Choate* the game-cocks were held not implements of gaming within the meaning of Rev. Sts. c. 50, § 19, not because they were not essential in the game of cock-fighting which was on when they were seized, but because the court was of opinion that a living animal would not in such a statute be called an implement or apparatus, and that the Legislature would not authorize a magistrate to burn or destroy a living animal, as it did authorize him to destroy gaming implements.    If the statute imposed a penalty upon being found in any house or building with gaming implements, it might be unreasonable to so construe it as to include in such implements articles capable of innocent use ; but a necessary element is that he shall be found in a common gaming-house resorted to for that purpose.

The witness O'Brien was properly admitted to testify as an expert.    It is not to be assumed that the jury were acquainted with the mode of playing an unlawful game, and the presiding justice might allow the witness to testify to his special knowledge derived from playing the game more than one thousand

times during a period of ten years, although the last occasion was more than a year before the trial, and there had since been changes and alterations in the game of which the witness knew only by hearsay. Even if he testified on the strength of information which he had not personally verified, such testimony might be admissible. See *Finnegan* v. *Fall River Gas Works,* 159 Mass. 311. The exception to the refusal to strike out the testimony of the witness must be overruled.

With this testimony in the case there was abundant evidence to support the verdict of guilty. A room on the door of which is the name of a club, which contains a blackboard devoted to "policy," and in which all business stops whenever an officer appears, and in which on his visits are found the implements ordinarily used in playing policy, may well be found to be a common gambling place.    *Exceptions overruled.*

*J. H. Blanchard,* for the defendant.

*F. E. Hurd,* First Assistant District Attorney, for the Commonwealth.