Commonwealth *vs.* Edwin W. Blankinship & others.

Plymouth. October 15, 1895. — December 3, 1895.

Present: Field, C. J., Knowlton, Morton, Lathrop, & Barker, JJ.

*Complaint for being present where Gaming Implements are found — Evidence — Common Gaming-house.*

If, at the trial of a complaint charging the defendant with being present in rooms where gaming implements are found, there is ample evidence to warrant a finding that the rooms were fitted up for the purpose of gaming, and were commonly resorted to and were used as a common gaming-house, the jury may disbelieve the testimony introduced in behalf of the defendant for the purpose of avoiding the ordinary inferences to be drawn from the circumstances shown by the government.

To make a building a common gaming-house it is not necessary that it should be open to all the public.

Complaint, under St. 1887, c. 448, § 2, to the Police Court of Brockton, charging the defendants with being present where gaming implements were found. At the trial in the Superior Court, before *Sherman,* J., there was evidence tending to show that there was a duly and legally organized club of a membership of about one hundred and fifty, which occupied two rooms in the Whipple-Freeman block on Main Street in Brockton; that the rooms could be entered from the hallway through one door, which was kept closed and locked by a Yale lock, and could be opened by any person having a key which would fit; that the door to the second room opening into the hallway was closed up

by sheathing on the inside and was not used; that on the inside of the room and a few feet from the door locked and used, there was a cloth or wire screen about six feet high; that the rooms were furnished with chairs and tables, and other furniture; that two of the tables were round and large, and covered with cloth; that in these two rooms upon the night of the arrest the officers found intoxicating liquors of various kinds, cigars, playing cards, and a cribbage board, and three of the defendants sitting at one of the large tables engaged in playing a game of cards; that the cribbage board was on the table; that there was also money thereon, one fifty-cent and one twenty-five-cent silver piece by the side of or near one of the three, and a one-dollar bill and one twenty-five-cent silver piece near another of the three; that the other defendants were in the rooms, some in one and some in the other; and that the large table was in the second room, in which the door was sheathed up.

There was also evidence tending to show that no person except a member of the club, or some person invited by a member, could gain admission to the rooms, and that no resident of Brockton could be invited to the rooms, and there was no evidence to the contrary.

There was also evidence tending to show that on a number of occasions, from April 20, 1894, to the time of the arrest of the defendants, these expressions were used in these rooms and overheard by police officers, to wit, "I'll chip you one," "I'll call you," "Three aces," "Pair of kings," "Jack pot," "Open pot," "Make your bets," "I'll raise you"; that these expressions were such as are used in the game called poker; that at the time when some of these expressions were used the sound of cards was heard; that on two occasions when some of such expressions were made there was heard what sounded like money, but the witness was not willing to swear that it was the sound of money.

There was evidence for the defendants that no game was ever played there for money or other thing of value, and that it was a rule or regulation of the club that there should be no gambling in the rooms; that the game called poker had been played in the rooms for matches, tooth-picks, and beans, but never for money or other thing of value; that monthly dues were paid; and that

tickets were then bought and paid for, which tickets were afterwards used when a member desired any liquor, beer, cigars, or tobacco, and for no other purpose.

The three defendants who were found sitting at the table playing cards testified that the money had just been paid by one of them to another in satisfaction of an old debt, and was not there for use in gambling, and that they did not at the time of the arrest make any such claim in regard to the money, and never told the story until they took the stand as witnesses in their own behalf, although they knew they had been arrested for gambling, and that the officers seized the money and kept it under the search-warrant. There was also evidence tending to show that there was money on the table in front of the third person who was playing, a part of which the officers got.

The defendants requested the court to instruct the jury, among other things, as follows: " 4. Upon all the evidence the jury must return a verdict of not guilty. 5. If these rooms were not open to the general public, and were resorted to only by members of said club or their invited guests, said rooms were not a common gaming-house, even if games for money were there played."

The judge refused to give the instructions requested. The jury returned a verdict of guilty ; and the defendants alleged exceptions.

*H. Kingman*, for the defendants.

*R. O. Harris*, District Attorney, for the Commonwealth.

KNOWLTON, J. The only exception argued in this case is to the refusal of the judge to give the fourth and fifth instructions requested. There was ample evidence to warrant a finding that the rooms referred to were fitted up for the purpose of gaming, and were commonly resorted to and were used as a common gaming-house. The jury might disbelieve the testimony introduced in behalf of the defendants for the purpose of avoiding the ordinary inferences to be drawn from the circumstances shown by the Commonwealth. The fourth request was therefore rightly refused.

The fifth request presents the question whether, if an incorporated club having one hundred and fifty members occupies rooms which are commonly used for gambling by the members

of the club and such other persons as the individual members invite to come there, it is taken out of the statutes in reference to common gaming-houses by the fact that it is not open to the public generally.

Under the English statute, which is not identical with ours, it is held that a building may be a common gaming-house, although resorted to only by members of a club for whose use the place is maintained. *Jenks* v. *Turpin*, 13 Q. B. D. 505. Gaming-houses in this country and in England are seldom open to all the public. Usually only those persons are admitted who are supposed to be willing to have the law violated in this way. Often strong doors and double locks are used to keep out, not only officers of the law, but all others who are not known to the proprietor or vouched for by his friends. The word "common" as applied to a gaming-house does not necessarily mean that it is open to all the public. The rulings requested and refused in the present case assume that the building was commonly resorted to for gaming, not only by the members of the club, but by such other persons as they chose to invite there. If so resorted to, it might well be found to be a common gaming-house. See *Commonwealth* v. *Adams*, 160 Mass. 310; *Commonwealth* v. *Warren*, 161 Mass. 281.  *Exceptions overruled.*