# CHARLESTON.

## STATE *v.* BAKER *et al.*

Submitted February 7, 1911. Decided April 25, 1911.

1. GAMING—*Keeping Gaming House—Misdemeanor.*
    The keeping of a common gaming-house is a misdemeanor at common law and, consequently, a violation of the law of this State. (p. 264).

2. SAME—*Keeping Gaming House.*
    That only those who gamble are admitted to the room where the gambling is carried on and the rest of the public are excluded therefrom, does not affect the crime. (p. 267).

3. SAME.
    The keeping of a common gaming house is unlawful whether the gambling therein be lawful or unlawful. (p. 266).

4. SAME.
    It is not material that a common gaming-house should be kept for lucre or profit. (p. 267).

5. SAME.
    It is not essential to constitute the offence of keeping a common gaming-house that the gambling therein should be in view

of the public, or that the public should be disturbed by noise therein. (p. 267).

Error to Circuit Court, Cabell County.

Wiley Baker and Dick Rader were convicted of keeping a gaming house, and bring error.

*Marcum & Shepherd*, for plaintiffs in error.

*William G. Conley*, Attorney General, and *Jean F. Smith*, Prosecuting Attorney, for the State.

WILLIAMS, PRESIDENT:

Wiley Baker and Dick Rader were indicted, tried and convicted, and adjudged by the circuit court of Cabell county to pay a fine of $50.00 each, and the costs of their prosecution, for keeping a common gaming-house; and they have brought the case here by writ of error.

Is the keeping of a common gaming-house a violation of the law of this state? We think it is. It was certainly an offence at the ·common law. "Common gaming-houses are a public nuisance at common law, being detrimental to the public, as they promote cheating and other corrupt practices; and incite to idleness and avaricious ways of gaining property persons whose time might otherwise be employed for the good of the community." 2 Russell's Law of Crimes (7th Eng. ed.) 1897; 1 Bishop's New Crim. Law, section 504. In section 1135, Bishop says: "A common gaming-house is a species of disorderly house, the disorder consisting of its allurements tending to evil." Its unlawfulness does not depend upon the unlawfulness of the games which may be therein played; the keeping of a common gaming-house is forbidden because it is a public nuisance tending to evil consequences. All the text writers say that it is an indictable offence at the common law. Joyce's Law of Nuisance, section 395; 1 Wood on Nuisance, sec. 45; Bacon's Abridgement, Vol. 7, page 223; 14 A. & E. E. L., 666; 20 Cyc. 893; *Woods* v. *Cottrell,* 55 W. Va. 491; *State* v. *Ehrlick,* 65 W. Va. 700; *Commonwealth* v. *Warren,* (Mass.) 37 N. E. 172; *Thrower* v. *State,* 117 Ga. 753.

The common law of England was made a part of the law of Virginia; and later, the law of this State. In May, 1776, Vir-

ginia passed an ordinance providing that "the common law of England, all statutes or acts of parliament made in aid of the common law prior to the fourth year of the reign of king James the first, and which are of a general nature, not local to that kingdom, together with the several acts of the general assembly of this colony now in force, so far as the same may consist with the several ordinances, declarations, and resolutions of the general convention, shall be the rule of decision, and shall be considered as in full force, until the same shall be altered by the legislative power of this colony." 9 Henning's Statutes at Large, 127. The general assembly, by act passed December 27, 1792, repealed so much of the above ordinance as relates to the English statutes made in aid of the common law; but that part of the ordinance making the common law a part of the law of Virginia was not repealed, and the common law of England continued to be the law of Virginia. 1 Min. 51. The first constitution of West Virginia which became the law of the State upon its admission into the Union, section 8, Article XI., declares: "Such parts of the common law and of the laws of the State of Virginia as are in force within the boundaries of the State of West Virginia, when this Constitution goes into operation, and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the Legislature." And section 21 of article VIII of the present constitution also declares the common law to be the law of this State until altered or repealed by the legislature. There is no statute in this state which repealed the common law in relation to the offence of keeping a common gaming-house; and the common law relating thereto is the law of this State. The statutes against gaming do not repeal, by implication, the common law offence of keeping a common gaming-house.

The demurrer to the indictment was properly overruled; the offence of keeping a common gaming-house is sufficiently alleged. The fact that the indictment alleges that the games which were played in the house kept by defendants were unlawful games is immaterial; such allegation may be treated as surplusage. It is not necessary that the games which were played should have been unlawful in order to constitute the offence with which defendants are charged.

The state produced a number of witnesses who testified that

they had gambled in the room kept by defendants, and they sometimes lost money, and sometimes won money, at a game played with cards called "stud poker." It does not appear that any greater amount of money than one or two dollars was ever won, or lost, by one person at any one game, or sitting. But the amount won or lost is immaterial, as the amount of money, or value of the thing gambled for, constitutes no part of the offence of keeping a common gaming-house.

It appears that the gambling room was over Rau's barber shop in the City of Huntington, and had to be reached by way of an alley; a stairway led from the alley up to a door opening into a hall or ante-room; and in order to obtain admission the visitor had to knock on this outer door, and if the guard, or keeper of the door, was satisfied that he was a gambler, he was then admitted; from this hall, or ante-room, another door led into another and still more private room where the gambling was carried on; there was a hole in the door leading into this room, through which the keeper inside could look out in order to determine whether the visitor was a proper person to be admitted; if he was known to the gambling fraternity as a gambler, he was admitted, if not too drunk. Only those who wished to gamble were admitted. The room was kept closed, and the gambling could not be seen except by those in the room. Some of the witnesses were advised of the location of this gambling room by persons on the street who knew of its location, and who would tell them when a game was going on. It appears that this room was only kept and used for the purpose of gambling. It does not appear that the room was used for any other purpose than as a gambling place; neither does it appear that the defendants kept this gaming-house for gain or lucre. It is testified to by at least one witness, who says he used to run the place himself, that the defendants kept this gaming-house in the year 1909 prior to October. The indictment was found on the 28th of October, 1909. Defendants offered no testimony, and there is no conflict in the evidence. Defendants rested upon their motion to strike out the state's evidence; this motion was overruled by the court; and the case allowed to go to the jury, and defendants excepted.

The fact that it is not proven that defendants kept the room for lucre is not material. True, some authorities hold that

to constitute the offence of keeping a common gaming-house it must be alleged and proven that it was kept for gain or lucre; but the better opinion, as well as the weight of authority, is to the contrary. The offence consists in the keeping of a gaming-house; the keeping of such house is, in law, a public nuisance; its character as a nuisance in nowise depends upon the matter of profit to those who maintain it. 1 Bishop's Crim. Law., sections 1086 and 1137; 14 A. & E. E. L., 715.

That the game was not carried on in view of the outside public, or that the public was not disturbed by noise from within, does not affect the case; these are not necessary elements of the offence. 14 A. & E. E. L. 697, and cases cited in notes 3 and 4.

It is none the less a common gaming-house because only those who desired to gamble were admitted within its walls. Says Hawkins, J., in *Jenks* v. *Turpin,* 13 L. R., Q. B. D., 515: "To no gambling house is the public at large invited to go without restriction of some sort or other. The keeper of such a house has always the right to admit or refuse admission to anyone he pleases, or to make such rules as he may think fit for the regulation of such admission." Again on the same page, the learned judge further says: "It is true that no annoying interference in the public street can be pointed to, so that in that sense a public nuisance can be said to have been created; but that is not necessary." Citing *Reg.* v. *Rice et al.,* 2 L. R., 1 C. C. R. 21, which we do not find in the library. *Commonwealth* v. *Blankenship,* 165 Mass. 40, 42 N. E. 115; *Commonwealth* v. *Warren,* 161 Mass. 281, 37 N. E. 172; 14 A. & E. E. L., 679; 20 Cyc. 893.

Counsel for defendants cite *State* v. *Maynard,* 66 W. Va. 552, as authority for the proposition that, in order to constitute the offence of keeping a common gaming-house, it must be shown that it was carried on in a public place. That case was an indictment under section 4 of chapter 151, Code 1906, for playing cards in a public place, and the proof showed that the playing was carried on in a secluded place. It was quite a different case from the present one. There the player was indicted for playing cards at a public place, a statutory offence; here the keepers are indicted for keeping a common gaming-house, a common law offence, and it matters not whether the gambling

carried on in the house was visible to the general public, or was lawful or unlawful. This case is not controlled by that one.

We find no error in the judgment of the court below and it will be affirmed.

*Affirmed.*