# Richmond

ROY TAYLOR V. COMMONWEALTH OF VIRGINIA.

December 7, 1942.

Record No. 2600.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and
Spratley, JJ.

414

*Vernoy B. Tate* and *D. F. Kennedy*, for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *Carrington Thompson, Special Assistant,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Roy Taylor was indicted for rape, tried and convicted. His punishment was fixed at 9 years in the penitentiary. The victim of the alleged rape was Mary Gilliam, who was 19 years of age at the time and the wife of Forester Gilliam.

Eleven assignments of error bring before us the challenged rulings of the trial court.

The Attorney General has moved that the petition be dismissed on the ground that it does not contain a clear and concise statement of the facts which is required by Rule 14, 1-(c). The penalty of non-compliance with the rule is that the clerk of this court is directed not to receive or file a brief (or petition where adopted as the opening brief) which fails to comply with the requirements of the rule. (Rule 14, sec. 7).

In the present case, the clerk has received and filed the petition. He raised no question of its sufficiency at the

time it was presented. If he had objected to the petition on the ground now urged by the Attorney General, no doubt the petition would have been changed to meet the objection. In any event, the petition is sufficient to meet the requirement of the rule, though the statement of facts contained therein is not as clear as it might have been. From the petition as a whole, we have no difficulty in ascertaining the facts. This renders it unnecessary to review the cases of *Oliver* v. *Commonwealth*, 163 Va. 347, 175 S. E. 864, and *Sowers* v. *Shertzer*, 171 Va. 426, 199 S. E. 477, in the light of our present rules which were later promulgated on January 1, 1939. Therefore, the motion to dismiss is overruled.

It is assigned as error that the testimony of the prosecutrix is so incredible that it is not worthy of belief and, consequently, the verdict and judgment are not supported by the evidence.

■ We do not agree that the verdict is not sufficiently supported. The prosecutrix testified in detail regarding the rape and her testimony was corroborated by the marks and bruises on her body; her torn, disarranged and dirty clothing, as well as the scuffed condition of the ground where the attack occurred, which indicated the struggle which took place there. The jury accepted her testimony even though there was substantial evidence that the prosecutrix and the accused had been rather intimate for more than a year before the time of the alleged rape; that he had met her several times clandestinely; that her husband was ignorant of these meetings; that she had sat on his lap in an automobile and had kissed him, and was otherwise guilty of indiscreet conduct with him.

The alleged rape occurred in a field in the broad daylight 100 feet from a highway and 150 yards from the home of the defendant's half sister while they and their eight children were at home. All of these circumstances were for the jury.

■ ■ There was no error in the refusal of the court to instruct the jury that they should scrutinize the testimony of the prosecutrix with great care and caution, if the proof of

the crime rested upon her uncorroborated testimony. This is not the law. The testimony of a prosecutrix need not be corroborated to sustain a conviction for rape, though, in the case at bar, the testimony of the prosecutrix was corroborated as we have already indicated.

The trial court permitted the attorney for the Commonwealth to ask two witnesses on cross-examination if they had stolen gasoline for the accused to which they each replied in the negative. Two women witnesses were asked on cross-examination by the attorney for the Commonwealth if they had not given birth to illegitimate children.

Timely objection was made by counsel for the accused but the court overruled the objection in the case of each witness. Exception was properly taken.

It is observed that the attorney for the Commonwealth had no judgment of conviction of larceny in the first instance, or of illicit cohabitation, or sexual immorality in the second, to offer in evidence against the witnesses. So far as the record discloses, he had no valid information that any of these witnesses had been convicted of any offense. It appears, inferentially at least, that he was on a "fishing expedition," asking questions regarding collateral matters which could only have had the effect of degrading and insulting the witnesses and prejudicing the accused whether so intended or not.

The evidence here was such that the jury would have been warranted in finding either for or against the accused. The case was so doubtful that it required a close evaluation of the testimony including the appraisal of the credibility of the witnesses. The unwarranted questions and the ordinary implication to be drawn from them most likely cast a stigma on the character of the witnesses in the minds of the jury, and, this alone, easily could have been the deciding factor in the case resulting in a verdict of guilt.

We have held that the credibility of a witness may be attacked by showing that he has been convicted of a misdemeanor which involves moral turpitude. *Bell* v. *Commonwealth*, 167 Va. 526, 189 S. E. 441.

The latest expression of this Court is found in the case of *Burford* v. *Commonwealth*, 179 Va. 752, 20 S. E. (2d) 509, where we considered many of the cases. It is needless for us to repeat what we said there. The character of the misdemeanor affords the test.

It is not intended by what we say here to modify the rule laid down in the *Bell case* and the *Burford case*. This case is essentially unlike those cases. Witnesses are always entitled to the protection of the court and should not be required to endure unnecessary insults.

To ask the two women witnesses if they had not given birth to illegitimate children was tantamount to asking them if they had not been guilty of unchastity. If questions of this nature could be properly propounded to these women, then they or others of like kind could be propounded to any female witness on cross-examination regardless of how virtuous and chaste she might be.

In the early case of *Howel* v. *Commonwealth*, 5 Gratt. (46 Va.) 664, similar questions were asked a woman witness and the reason given then (nearly 100 years ago) for not permitting such questions is a valid reason today. This language of the lower court was approved in that case: "That the questions tended immediately and directly to degrade and disgrace the witness. And the court was further of opinion, that the morals of the county require that parties should not be permitted to ask such questions of female witnesses; and that, if virtuous females could be thus tortured by questions in relation to their chastity, it would be impossible to procure their testimony, unless by compulsory process, and would lead to conflicts and violence between counsel and suitors, and the husbands, brothers and fathers of such witnesses."

If female witnesses could be asked about their chastity, like questions could be asked male witnesses. To permit either would likely lead to violence in many cases just as suggested in the *Howel case*.

In *Fenner* v. *Commonwealth*, 152 Va. 1014, 148 S. E. 821, we held it improper to ask a witness to testify regarding the

moral character of a woman witness. What was her general reputation as to "immoral character" was asked. Her reputation for truth and veracity had already been shown in evidence. The court held that, while it was error to allow her chastity to be inquired into, inasmuch as there was ample evidence of the guilt of the accused, it did not constitute reversible error in that case. The court said: "Our judgment is that the question should not have been permitted, but we do not think the case should be reversed because of this error."

There is considerable conflict in the authorities as to whether a witness may be cross-examined as to sexual morality. The majority rule is that questions of sexual morality may be asked. On the other hand, there is a respectable minority which hold to the contrary, and Virginia is found in that class. See 65 A. L. R. 410. We adhere to the rule established in the *Howel case* and later followed in the *Fenner case*, because we think it the better one.

In his closing argument to the jury the attorney for the Commonwealth indulged in improper and unfair comparisons. He compared the accused, who had not taken the stand, to a bull, and the prosecutrix to a heifer. This is what he said: "On a particular night that animal (a bull) was next to a heifer that wanted with him and when she got close to him, he did not pay any attention to a big wire fence to get through it; he was not normal at that time, and a man committing rape is not normal." Objection was timely made to this argument but no ruling of the court appears. The attorney for the Commonwealth continued after the objection with this: "I am stating it as an illustration of Roy Taylor (the accused); he knew Mary Gilliam was in the woods; he was not normal; he had been thinking about her after he had seen her there; he had been thinking about her." The argument continued unchecked by the court, though objections were made.

The first valid objection to the argument is that there was no evidence to justify it. The accused had not testified and there was no evidence of any sexual abnormality

on his part or of his mental condition before the alleged rape. We do not know what was in his mind. To say that he was like an unruly bull that would not be restrained by a wire fence from going to a heifer that "wants him" was grossly improper. Nothing in the evidence warranted that statement and its only purpose was to place the accused before the jury as an animal or brute. Such an argument was calculated to inflame the jury and divert its attention from the evidence and center it upon something that had no place in the case. The attorney for the Commonwealth made an affidavit to the effect that his argument in this regard was provoked by the argument of counsel for the accused. This affidavit is no part of the record and will not be considered.

The attorney for the Commonwealth is not only under the duty to prosecute one accused of crime, but it is also his duty to see that an accused is accorded a fair trial.

The other assignments of error have been examined and found to be without merit.

The verdict of the jury is set aside and the judgment is reversed. The case is remanded for a new trial.

*Reversed and remanded.*

CAMPBELL, C. J., concurring in result.