# Richmond

## ROBERT S. PARR v. COMMONWEALTH OF VIRGINIA.

January 21, 1957.

Record No. 4637.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

The opinion states the case.

*Charles Garian*, for the plaintiff in error.

*Thomas M. Miller, Assistant Attorney General (J. Lindsay Almond, Jr., Attorney General*, on brief), for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

Robert S. Parr was convicted by a jury on a warrant charging him with aiding and abetting "in the operation of a certain disorderly house situated at #11 N. 7th St., for the purpose of gambling." We granted a writ of error to the judgment entered on that verdict.

The assignments of error challenge (1) the sufficiency of the evidence to sustain the verdict, (2) the admissibility of certain evidence offered by the Commonwealth, and (3) the sufficiency of the warrant raised by a motion in arrest of judgment.

[■] The evidence which is before us in narrative form shows these facts: Police Officer M. W. Johnson, a member of the vice squad of the police department, testified that on the night of September 18, 1955, he and other officers planned a raid on premises number 11 North Seventh street, in the City of Richmond. Upon arriving at the premises Johnson placed a ladder at the rear of the building and spent about an hour looking through an opening of a wall exhaust fan into the room below. He observed eight men engaged in a poker game around an oval table. He heard and saw the players making bets on the game. The defendant, Parr, took no part in the game as a player, but dealt the cards and kept the bets straight. Joseph Weinstein was observed selling poker chips and drinks to various persons in the room and making change from a large roll of money which he kept in his pocket. From time to time, he conferred with Parr as the latter dealt the cards at the gaming table.

After Johnson had reported his observations to his fellow officers the latter rang the front doorbell which was answered by Weinstein. When the officers rang the bell and before they entered the room, Johnson said that Weinstein warned the players that the police were coming and told them to put their cards in their pockets and tell the police that they had been playing "rummy."

The evidence on behalf of the Commonwealth further showed that the premises were occupied by an organization known as the "Busi-

ness Men's Social Club." Members were admitted to the club upon the payment of a fee of $1.00. There were no other dues.

Among the paraphernalia found in the room by the officers was a sports ticker operated from a station of the Western Union Telegraph Company, a billiard table, and the oval table around which the card game was being played. There is evidence that this paraphernalia is usually found in a gambling house.

Parr, who is a young man twenty-two years of age, denied at the trial, as he had done to the police officers at the time of his arrest, that he was aiding and abetting in the operation of the establishment. He denied that he had been dealing the cards as testified to by Johnson, and claimed that he had gone to the house with another member of the club for the purpose of engaging in a sociable game of "rummy" about fifteen minutes before the officers arrived. He testified that he had no income, had not worked for three and one-half months, and lived with his parents.

Weinstein testified that he was not the operator of the establishment and had no connection with the club other than that of a member. He said that he operated a restaurant at another location and went to the club "occasionally" for the purpose of recreation. He denied that a poker game was in progress when the officers came into the room.

The theory of the Commonwealth's case against Parr was that he was assisting Weinstein in the operation of the establishment on the night of his (Parr's) arrest. In the light of the jury's verdict which has settled the conflicts in the evidence adversely to the defendant, we find ample evidence to sustain the conviction.

On cross-examination, over the objection of counsel for the defendant, Weinstein was asked whether he had been previously convicted on a charge of engaging in the management of a lottery commonly known as a "numbers game or clearing house." He admitted that he had been. Over like objection, he further admitted that he had been recently convicted of operating this gambling establishment on this particular night. The trial court ruled that these admissions were admissible for the purpose of impeaching the credibility of the witness, Weinstein.

The defendant complains that the court committed reversible error in admitting into the evidence proof of these prior convictions of Weinstein. The argument is that conducting a lottery or numbers game and conducting a gambling establishment are misdemeanors not involving moral turpitude, and hence proof of conviction of such

offenses was not admissible to impeach the credibility of the witness, Weinstein.

This court is firmly committed to the view that proof of conviction of a misdemeanor involving moral turpitude is admissible to impeach the credibility of a witness, and that conversely, proof of conviction of a misdemeanor not involving moral turpitude is inadmissible for that purpose. *Bell* v. *Commonwealth*, 167 Va. 526, 189 S. E. 441; *Burford* v. *Commonwealth*, 179 Va. 752, 20 S. E. 2d 509; *Taylor* v. *Commonwealth*, 180 Va. 413, 23 S. E. 2d 139; *Chesapeake & Ohio Ry. Co.* v. *Hanes, Adm'r.*, 196 Va. 806, 86 S. E. 2d 122; *Pike* v. *Eubank*, 197 Va. 692, 90 S. E. 2d 821.

In the *Bell* case, *supra*, we held that petit larceny is an offense involving moral turpitude because "few crimes are baser than larceny or discredit more the credibility of a witness." 167 Va., at page 539, 189 S. E., at page 447.

In the *Burford* case, *supra*, we held that assault and battery is not a crime involving moral turpitude.

In the *Chesapeake & Ohio Ry. Co.* case, *supra*, we held that making a false statement is a crime involving moral turpitude.

In the *Pike* case, *supra*, we held that drunkenness and illegal possession of liquor do not involve moral turpitude.

In none of these cases have we undertaken to define moral turpitude or draw the line between those crimes which are or are not of that character. In *Taylor* v. *Commonwealth, supra,* we said that, "The character of the misdemeanor affords the test." 180 Va., at page 418, 23 S. E. 2d, at page 141.

When we examine the authorities from other jurisdictions we find a wide divergence of views as to what crimes do and do not involve moral turpitude. See 58 C. J. S., Moral Turpitude, p. 1200 *ff*. Some authorities state the dividing line to be whether the particular offense is *malum in se* or *malum prohibitum.* Others decline to accept that classification.

The authorities generally agree that a crime which involves moral turpitude is "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." 58 C. J. S., Moral Turpitude, p. 1201. This is the definition found in Black's Law Dictionary, 4th Ed., p. 1160. Generally speaking, acts which fall within this definition are *per se* immoral and inherently evil.

It is well settled that gambling and keeping a gambling house are distinct offenses, and that while gambling is not an offense at common law, keeping a common gaming house is. 24 Am. Jur., Gaming, etc., § 38, p. 425; 38 C. J. S., Gaming, § 90, p. 154. For a discussion of the subject see *State* v. *Baker*, 69 W. Va. 263, 71 S. E. 186, 33 L. R. A. (N. S.) 549.

Holding a lottery is not an offense at common law unless conducted in such manner or in such proportions as to constitute a public nuisance. 34 Am. Jur., Lotteries, § 22, p. 664.

In *Stone* v. *Mississippi*, 101 U. S. 814, 821, 25 L. ed. 1079, 1081, it was said that lotteries "are not, in the legal acceptation of the term, *mala in se*, but * * * may properly be made *mala prohibita*."

In *United States* v. *Carrollo*, D. C. Mo., 30 F. Supp. 3, it was held that the operation of a lottery is not an offense involving moral turpitude.

Similarly, in *Hofferman* v. *Simmons*, 177 Misc. 962, 32 N. Y. S. 2d 244, it was held that "bookmaking" is not such an offense.

We have been pointed to no case, nor have we been able to find any, holding to the contrary, or holding that the operation of a lottery or gambling establishment is an offense involving moral turpitude.

In this State gambling, keeping a gambling house, and the operation of a lottery are *mala prohibita*. Section 60 of our Constitution provides: "No lottery shall hereafter be authorized by law; and the buying, selling, or transferring of tickets or chances in any lottery shall be prohibited."

We have statutes prohibiting gambling, the operation of gambling houses and lotteries. Code, § 18-278 *ff*.

The operation of a "numbers game" falls within the prohibition of Code, § 18-301, which forbids the operation of a lottery. *Quidley* v. *Commonwealth*, 190 Va. 1029, 59 S. E. 2d 52; *Roy* v. *Commonwealth*, 191 Va. 722, 62 S. E. 2d 902.

However, in some States gaming in various forms has been legalized and gaming houses and lotteries are licensed and permitted to operate. 24 Am. Jur., Gaming, etc., §§ 8, 9, 10, pp. 403-405; 34 Am. Jur., Lotteries, §§ 20, 21, pp. 662-664; 54 C. J. S., Lotteries, §§ 14-17, pp. 860-861.

Our conclusion is that while the conduct of a "numbers game" is contrary to the public policy of this State and our standard of morals, it is not *per se* immoral or inherently evil and does not involve moral

turpitude. To adopt the opposite view would lead to the conclusion that other States legalize and permit operations which are *per se* immoral and inherently evil. It is inconceivable that they would do so.

[■] While it follows from what has been said that proof of Weinstein's conviction of operating a lottery or numbers game on a prior occasion was inadmissible to impeach his credibility, it clearly appears that under the circumstances of the case the admission of such evidence was harmless error.

As has been said, Weinstein testified that he was not operating the establishment on the night Parr was arrested. Over the objection of counsel for Parr, he was forced to admit on cross-examination that he had recently been convicted of such operation. Clearly such admission was competent evidence to contradict Weinstein. *Jones v. Commonwealth*, 135 Va. 545, 547, 115 S. E. 572.

Thus it was brought to the attention of the jury in a proper way that Weinstein had been convicted of operating this gambling house. Proof that he had been previously convicted of a similar offense was merely cumulative and added little, if anything, to the impeachment of his credibility. Moreover, aside from the matter of impeachment, there was ample evidence to warrant the jury in rejecting Weinstein's testimony that he was not the operator of the establishment.

■ Further complaint is made of the action of the trial court in overruling the defendant's motion in arrest of judgment on the ground that the warrant was insufficient in law in that it failed to allege whom the defendant was aiding and abetting in the operation of the establishment.

There is no merit in this contention. The lack of such specification in the warrant did not make it insufficient in law and void. Had the defendant desired the specification of the name of the principal whom he was charged with having aided, this information could have been obtained by a motion for a bill of particulars. There was no such motion, and the objection to the sufficiency of the warrant on this ground, made after verdict, came too late. Moreover, there is no showing that the defendant was in any way prejudiced by this lack of specification. It was perfectly apparent during the trial that Weinstein was the principal whom the defendant was charged with having aided in the operation of the establishment.

We find no reversible error in the proceedings, and the judgment is

*Affirmed.*