Richmond

## KENT JAMES HACKMAN

### V.

## COMMONWEALTH OF VIRGINIA

January 11, 1980.

Record No. 790365.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*John W. Drescher* (*Margaret M. Lawlor; Pickett, Spain & Lyle,* on brief), for appellant.

*Robert H. Anderson, III, Assistant Attorney General* (*Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Tried upon an indictment charging him with perjury in violation of Code § 18.2-434,[1] Kent James Hackman was found guilty by a jury,

---

[1] If any person to whom an oath is lawfully administered on any occasion wilfully swear falsely on such occasion touching any material matter or thing . . . he shall be guilty of perjury punishable as a Class 5 felony. . . .

which fixed his punishment at confinement in jail for nine months and payment of a fine of $1,000; judgment was entered upon the verdict. We granted Hackman a writ of error limited to the questions whether the court erred in denying Hackman the right to discover certain statements that were in the possession of the Commonwealth, and in instructing the jury that it could consider Hackman's prior conviction of a crime of moral turpitude as affecting his credibility.

In 1977, Hackman operated a restaurant in Virginia Beach in which he employed Gerry Myers as a bartender. After being discharged from his employment, Myers filed a civil action against Hackman for unpaid wages. At trial in the General District Court on February 7, 1978, Hackman introduced into evidence in defense of the claim a cancelled check issued to Myers as payee and cashed by him on November 7, 1977, in the sum of $500, the approximate amount of his wage claim. Myers testified that the check had been delivered to him not for wages, but for the purpose of making an illegal purchase of liquor for Hackman's restaurant, that Hackman had accompanied him when he cashed the check, and that he made the purchase and remitted to Hackman the money left after paying for the liquor. Denying these allegations, Hackman testified that he gave the check to Myers for wages. The General District Court thereupon dismissed the action.

Subsequently, based upon additional evidence, Hackman was indicted for perjury because of his testimony in the civil action. He was also charged with three violations of Code § 4-98.10[2] of the Alcoholic Beverage Control (ABC) Act on November 7, 1977, following the purchase of liquor to which Myers had testified.

Prior to his trial upon the perjury indictment, Hackman pleaded guilty to each of the three charges of violating the ABC Act, but the trial court withheld imposition of sentences for these offenses pending disposition of the perjury charge. Hackman conceded in his perjury trial that the $500 check with which he had successfully defended the civil action for wages had, indeed, been given to Myers to purchase liquor illegally; that he and C. P. Baldwin, another of his bartenders, had accompanied Myers to cash the check for that purpose; that he did not go into the ABC store because Myers and

---

[2] The violations charged were keeping alcoholic beverages which he was not authorized to sell, refilling and transferring alcoholic beverages in bottles other than those in which it was purchased, and selling and serving unauthorized alcoholic beverages. Under the statute, the punishment upon conviction of each offense was a fine of not less than $50 nor more than $500, or confinement in jail for not less than 30 days nor more than 12 months, or both.

Baldwin wished to "handle" the purchase, and it would have been unlawful for him to buy it, he "guess[ed]"; and that Myers gave him the change from the purchase. Nevertheless, Hackman insisted that, in testifying to the contrary in the civil trial, he had merely been mistaken, and had not knowingly given false testimony.

Hackman contends that the Commonwealth failed to furnish him statements to which he was entitled under Rule 3A:14. Although his counsel duly filed a pretrial motion for discovery, no order was ever entered thereon by the trial court; in response to the motion, however, the Commonwealth's Attorney voluntarily delivered to defense counsel copies of various statements. The absence of a clarifying order will not prevent us from determining the issue on its merits in this case; nevertheless, we caution members of the trial bar that generally it is advisable to have a court order or written stipulation specify precisely what is to be discoverable, thereby avoiding misunderstandings that may lead to fatal consequences on appeal.

The statements in question were given to the investigating officers by prosecution witnesses, Myers and Candice Sams. The statement of Myers included his recollection of a conversation between him and Hackman on the date the illegal purchase of liquor was made. The statement of Sams gave her version of Hackman's testimony at trial of the civil action. When the failure to furnish Hackman's counsel with copies of these statements was called to the attention of the court during trial, the court ruled that the statements were not discoverable. We agree.

Rule 3A:14 provides for limited pretrial discovery by the accused in a felony case. *Bellfield* v. *Commonwealth,* 215 Va. 303, 306, 208 S.E.2d 771, 773 (1974). The limitations applicable in the present case are found in the following provisions of Rule 3A:14(b), as amended, effective January 15, 1978:

"(1) Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph any relevant (i) written or recorded statements or confessions made by the accused, or copies thereof, that are known by the Commonwealth's attorney to be within the possession, custody or control of the Commonwealth. . . .

"(2) Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph designated books, papers, documents . . . that are within the possession, custody or control of the Com-

monwealth, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. This subparagraph does not authorize the discovery or inspection of statements made by Commonwealth witnesses or prospective Commonwealth witnesses to agents of the Commonwealth or of reports, memoranda or other internal Commonwealth documents made by agents in connection with the investigation or prosecution of the case, except as provided in clause (ii) of subparagraph (b)(1) of this Rule" [inapplicable in the present case].

The statements of Myers and Sams were not discoverable under subparagraph (b)(1) because they were not written or recorded statements or confessions made by Hackman. They were statements made by prospective Commonwealth witnesses to agents of the Commonwealth in connection with the investigation or prosecution of the case; as such, they were expressly excluded from discovery by subparagraph (b)(2). To be discoverable the statement must be given by the accused rather than by a witness who heard the accused speak.

Rule 16(a) of the Federal Rules of Criminal Procedure, similar to our Rule 3A:14, has also been construed to deny discovery of statements given by witnesses or prospective witnesses. *See United States v. Pollack,* 534 F.2d 964 (D. C. Cir.), *cert. denied,* 429 U.S. 924 (1976); *United States v. Feinberg,* 502 F.2d 1180 (7th Cir. 1974), *cert. denied,* 420 U.S. 926 (1975).

■ Hackman objected to Instruction 2[3] granted by the trial court. His attack is twofold. He contends that violations of the ABC Act are misdemeanors not involving moral turpitude, and also that, even if the offenses do involve moral turpitude, no convictions resulted, prior to sentencing, upon which the instruction properly could be based.

Evidence of conviction of a misdemeanor involving moral turpitude is admissible to impeach the credibility of a witness; evidence of conviction of a misdemeanor not involving moral turpitude is inadmissible for such purpose. *Parr v. Commonwealth,* 198 Va. 721, 724, 96 S.E.2d 160, 163 (1957). The determining factor is the character of the misdemeanor. *Taylor v. Commonwealth,* 180 Va. 413, 418, 23

---

[3] The proof of the defendant's prior conviction of a crime of moral turpitude may be considered by the jury as affecting his credibility, but it does not render the defendant incompetent to testify, nor shall it be considered by the jury as evidence of his guilt of the offense for which the defendant is now on trial.

S.E.2d 139, 141 (1942). Thus, making a false statement is a crime involving moral turpitude, *C. & O. Ry. Co.* v. *Hanes, Adm'r,* 196 Va. 806, 86 S.E.2d 122 (1955), but drunkenness and illegal possession of liquor are not, *Pike* v. *Eubank,* 197 Va. 692, 90 S.E.2d 821 (1956). In *Parr,* we held that operation of a "numbers game", while contrary to public policy in Virginia, was a lawful activity in some states, was not inherently evil, and did not involve moral turpitude. Petit larceny involves moral turpitude. *Bell* v. *Commonwealth,* 167 Va. 526, 189 S.E. 441 (1937). Violation of a federal law prohibiting the transportation or removal of untaxed liquor does not. *Burford* v. *Commonwealth,* 179 Va. 752, 765, 20 S.E.2d 509, 514 (1942). And in *Clark* v. *Commonwealth,* 202 Va. 787, 120 S.E.2d 270 (1961), we held that evidence showing that a witness had been arrested and charged with driving under the influence of intoxicants, had purchased liquor for a juvenile in violation of the law, and had committed other acts that reflected upon his character was inadmissible where there had been no convictions.

In the present case, the misdemeanor indictments charged Hackman in general terms with keeping and selling unauthorized alcoholic beverages and with refilling and transferring alcoholic beverages in bottles other than those in which they were purchased, in violation of Code § 4-98.10. As a regulatory provision of the ABC Act, Code § 4-98.10 applies directly and exclusively to licensees, and imposes conditions and restrictions upon their resale of liquor. Under Code § 4-37, any violation of Code § 4-98.10 would enable the Virginia Alcoholic Beverage Control Commission to revoke or suspend Hackman's license to operate under the ABC Act. Thus, the consequences resulting from a violation of the ABC Act are more serious for a licensee than for other transgressors who are subject only to the specified misdemeanor penalties. Nevertheless, on its face the language of the indictments does not describe crimes involving moral turpitude.

Under the circumstances of this case, however, we hold that the trial court did not commit reversible error in granting Instruction 2. The details of Hackman's conduct were fully outlined for the jury. The evidence shows that Hackman, as a licensee under the ABC Act, was required to purchase liquor for his restaurant from a designated ABC store and that he initiated a purchase from another store, thereby avoiding payment of the full amount of taxes properly collectible upon the transaction. Hackman issued the $500 check to Myers, drove Myers and Baldwin to Hackman's bank to cash the check, deliberately absented himself when his two agents made the illegal purchase of liquor, accepted the change left from the purchase, and drove his

employees and cargo back to his restaurant, where the liquor was unloaded and placed in the bar for resale. The evidence compels the reasonable inference that Hackman planned and carried out the entire illicit scheme for his economic benefit. Through stealth and subterfuge he sought to avoid the special duties imposed upon him by the ABC Act.

Hackman testified, upon direct examination, that the three ABC Act charges were then pending against him in the trial court, that he had pleaded guilty to the charges, and that aside from those charges, he had never been convicted of a felony or a misdemeanor involving moral turpitude. On cross-examination, he conceded that he was able to recall the events of November 7 he had disavowed in the February trial, that he gave Myers the check for liquor, and that he knew the purchase of liquor was illegal. His explanation for having denied in February that he went to the ABC store with Myers was that "the emphasis was on the check and the incident going there just didn't ring a bell at the time".

J. R. Staub, Hackman's accountant, testified, as a prosecution witness, that at Hackman's direction he had first entered the November 7 check for $500 cashed by Myers as a disbursement for supplies, an item that included liquor. About February 7, at Hackman's request, he delivered the cancelled check to him; Hackman never returned it. About February 20, when the matter was under further investigation, Hackman instructed Staub to change the ledger entry to show the check as a charge for labor rather than supplies. Subsequently, after the Commonwealth's Attorney had filed a subpoena duces tecum for the production of Hackman's records, including his accounting ledgers, Staub followed the instructions of Hackman's counsel and changed the ledger entry back to show the $500 check as a charge for supplies.

There was evidence that Hackman had testified in the February 7 trial that he always purchased his liquor by checks payable to the ABC Board. Hackman testified in the perjury trial that he usually purchased liquor in this manner. He admitted that he had occasionally sent employees to purchase liquor illegally, but he denied that he did so on a regular basis. His testimony in this respect was consistent with that of two prosecution witnesses, Baldwin and Grace Michaels, who had already testified that from time to time they had illegally purchased liquor for Hackman at his direction.

A character witness, Frank Johnston, testified for Hackman. On cross-examination, he was asked, without objection, whether it would change his opinion to know that Hackman "had been convicted of three offenses of cheating the government of tax money".

It thus appears that throughout the evidentiary phase of the trial, Hackman and the Commonwealth treated his guilty pleas to the ABC Act indictments as convictions of misdemeanors involving moral turpitude. They were revealed to the jury without objection, and, indeed, initially by Hackman himself. He admitted that he was guilty of the violations, and the evidence was overwhelming that he was guilty of perjury. Under these circumstances, we hold that Hackman was not prejudiced by Instruction 2, and that any error of the trial court in granting the instruction was harmless.

Accordingly, the judgment of the trial court will be affirmed.

*Affirmed.*