COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Petty and Alston
Argued at Richmond, Virginia


LAWRENCE BARTLESON PALMER
                                                    MEMORANDUM OPINION[*] BY
    v.  Record Nos. 1949-07-2 and                   JUDGE ROBERT J. HUMPHREYS
            0072-08-2[1]                             JULY 28, 2009

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                          Michael C. Allen, Judge
                  Wilford Taylor, Jr., Judge Designate[2]

        Diane M. Abato (Abato & Davis, on brief), for appellant.

        Jennifer C. Williamson, Assistant Attorney General (William C.
        Mims, Attorney General, on brief), for appellee.


        Lawrence Bartleson Palmer ("Palmer") appeals the trial court's denial of his motions to

reconsider.  On appeal, Palmer contends that the combination of the evidence adduced at trial

and the evidence discovered afterward required the trial court to grant him a new trial.  Palmer

further contends that the prosecutor in his case committed a Brady violation by not disclosing the

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Though this case has two record numbers, it is a single appeal.  On August 9, 2007,
Palmer was tried in a bench trial and found guilty of indecent exposure and eluding police.
However, the final order was not entered until August 27, 2007.  Nevertheless, Palmer's trial
counsel at the time (Herbert Laine) filed a notice of appeal on August 13, 2007.  That appeal was
assigned Record No. 1949-07-2.  Over the next few months, Palmer hired a new attorney
(Anthony Spencer) and filed two motions to reconsider, both of which were denied by the trial
court.  Following the denial of his second motion to reconsider, Palmer filed an amended notice
of appeal on January 2, 2008, which was assigned Record No. 0072-08-2.

        [2] Judge Michael C. Allen presided over Palmer's trial and first motion to reconsider.
Judge Wilford Taylor, Jr. presided over Palmer's second motion to reconsider on December 3,
2007.

fact that the complaining witness lied when she testified at trial. For the following reasons, we affirm.

## BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). Therefore, we must "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted). So viewed, the evidence was as follows.

On January 14, 2007, Crystal Thurmond[3] ("Thurmond") and her fiancé were traveling from Wilmington, North Carolina, to Washington D.C. At approximately 6:00 p.m., Thurmond stopped at an East Coast gas station in Chesterfield County. Thurmond entered the gas station's convenience store and went to the ladies' room. Upon entering the ladies' room, Thurmond testified that she opened the door to the first stall and "s[aw] the defendant [Palmer] sitting there with his pants to his knees fondling himself, masturbating." Thurmond further testified that she stood and looked at Palmer for a few seconds, called him "sick," and then left the ladies' room. Thurmond reported what she saw to the store clerk and the police. While she was on the phone with the police, Thurmond observed Palmer leave the ladies' room, purchase a cup of coffee, and then return to his vehicle.

During cross-examination, the following exchange took place between Thurmond and defense counsel:

---

[3] At trial, the complaining witness was referred to as Crystal "Thurman." However, the correct spelling of her name is "Thurmond." No one asked her to spell her name for the court reporter.

- 2 -

Q: Have you ever been convicted of a felony or a crime involving moral turpitude or a misdemeanor involving moral turpitude?

A: I've never been convicted of any crimes, sir.

Q: Being aware that moral turpitude is anything having to do with dishonesty, like theft or things of that nature.

A: I've never been convicted of any crime.

In fact, Thurmond had two convictions from North Carolina on her record, one for disorderly conduct and the other for reckless driving. Thurmond had also been charged with misdemeanor larceny; however, she was never convicted of that offense.

Officer Nathan Almond ("Almond") of the Chesterfield County Police Department also testified as a witness for the Commonwealth. Almond responded to a report that a gentleman had exposed himself and was masturbating in the women's bathroom of the East Coast gas station near "Route 10 and Kingston or Kingsland." Almond testified that, as he arrived at the gas station, he received an updated report that the suspect was traveling eastbound on Route 10. The update also included a description of the vehicle. Almond located a vehicle matching the description, verified the vehicle's license plate number, and activated his emergency equipment. Almond testified that the driver of the vehicle did not pull over for some time, despite the fact that there were numerous places where he could have done so safely. When the vehicle finally pulled over, Almond identified Palmer as the driver. The police then escorted Thurmond to the scene, and she identified Palmer as the man she saw in the ladies' room.

Palmer testified that he stopped at the East Coast gas station on his way home from a round of golf. Palmer testified that he was experiencing "diarrhea symptoms" as the result of some medications that he was prescribed. Palmer stopped at the gas station because he "didn't feel like [he] was going to make it back without stopping at that point." Palmer stated that he entered the gas station and asked the clerk where he could find the restroom. The clerk indicated that the restrooms

were located in the back of the store. Palmer testified that he proceeded to the back of the store, entered the bathroom to the right, and went into the first stall on the left. Palmer further testified that he did not know he was in the ladies' room. Palmer stated that he attempted to close the door to the stall, but could not because the latch was missing.

Palmer testified that approximately five to eight minutes later, he heard someone enter the restroom. Moments later, a person opened the door to Palmer's stall and then "shut the door quickly." Palmer claimed that he was unable to identify whether the person who opened the door was male or female. Approximately five minutes later, the door to the ladies' room opened and a voice yelled, "Sir, you're in the wrong bathroom. I'm going to call the police." Palmer then left the ladies' room, purchased a cup of coffee, and "drove off." When asked if he entered the convenience store in order to perform a lewd or obscene act with the hope that some female would view it, Palmer responded "[a]bsolutely not."

After hearing testimony from Thurmond, Almond, Palmer, and two character witnesses who testified on behalf of Palmer, the trial court found Palmer guilty of indecent exposure and eluding police. The trial court specifically found Thurmond to be a more credible witness than Palmer and noted that Palmer's failure to stop for the police was further evidence of his guilt. Following his conviction, Palmer filed a motion to reconsider. Palmer asked the trial court to reconsider whether Thurmond's testimony proved his guilt beyond a reasonable doubt. Palmer also asked the trial court to consider after-discovered evidence of Thurmond's bad character and reputation for dishonesty. The trial court denied Palmer's motion to reconsider, finding that the new evidence could have been discovered prior to trial through the reasonable diligence of Palmer.

On November 2, 2007, Palmer filed a renewed motion to reconsider, which challenged the legal standard used by the trial court in denying his first motion to reconsider. Palmer also alleged that the Commonwealth committed a Brady violation by not providing Palmer with information that

- 4 -

Thurmond had been convicted of disorderly conduct and that she had a driver's license for a state in which she did not live. Again the trial court denied Palmer's renewed motion to reconsider. The trial court found that there was no Brady violation and that it was presented with no evidence to justify reopening the case.

This appeal followed.

ANALYSIS

I. Motions to Reconsider

Palmer argues that the trial court erred in denying his motions to reconsider in light of after-discovered evidence of Thurmond's bad character and reputation for dishonesty, as well as the inconsistencies contained in her trial testimony. Palmer maintains that

> [a]n examination of the evidence both adduced at trial and discovered afterward ma[ke] it overwhelmingly clear that the trial court could not rely on the testimony of [Thurmond] to establish beyond a reasonable doubt that [Palmer] intentionally made an obscene display or exposure of himself in a public place or place where others [were] present.

We disagree.

Though styled as a "Motion to Reconsider," Palmer's motion was essentially for a new trial.

> "Motions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance. . . . The applicant bears the burden to establish that the evidence (1) appears to have been discovered subsequent to trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial."

Hopkins v. Commonwealth, 20 Va. App. 242, 249, 456 S.E.2d 147, 150 (1995) (*en banc*) (quoting Stockton v. Commonwealth, 227 Va. 124, 149, 314 S.E.2d 371, 387, cert. denied, 469 U.S. 873 (1984)). In order to succeed, "[t]he moving party must establish each of these

mandatory criteria." Commonwealth v. Tweed, 264 Va. 524, 529, 570 S.E.2d 797, 800 (2002). In this case, we need go no further than noting that Palmer failed to establish that the evidence "could not have been secured for use at trial in the exercise of reasonable diligence." Hopkins, 20 Va. App. at 249, 456 S.E.2d at 150.

"'[A] party who seeks a new trial on the ground of after-discovered evidence must show that he used reasonable diligence to secure such evidence before the earlier trial.'" Carter v. Commonwealth, 10 Va. App. 507, 513, 393 S.E.2d 639, 642 (1990) (quoting Fulcher v. Whitlow, 208 Va. 34, 38, 155 S.E.2d 362, 365 (1967)). "'It is not sufficient merely to say that the evidence could not have been discovered by the use of due diligence.'" Id. at 513, 393 S.E.2d at 642-43. Rather, "'[t]he applicant for a new trial must set forth in affidavits facts showing what his efforts were to obtain the evidence and explaining why he was prevented from securing it.'" Id. at 513, 393 S.E.2d at 643.

First and foremost, Palmer failed to provide any explanation for why he could not obtain the evidence of Thurmond's alleged criminal record and reputation for dishonesty before trial. Second, much of what Palmer claims he "could not have known through the exercise of reasonable diligence" was, in fact, known to Palmer prior to trial. Palmer asserts that he could not have known through the exercise of reasonable diligence that: (1) Thurmond would testify at trial that she had never been convicted of a crime; (2) Thurmond had a prior criminal conviction; and (3) Thurmond has a reputation in her community as a dishonest person. However, the record in this case belies Palmer's assertion.

On July 13, 2007, almost a month before trial, a private investigator retained by Palmer conducted a criminal records search of "Crystal Thurmond" at the request of Palmer's trial counsel. The report indicated that Thurmond was convicted of reckless driving and disorderly conduct in 1994 and that she was charged with larceny in 1996. The report also stated that "[a]ll

information was reported verbally and this report was sent to the Client with results and these suggestions for further surveillance." Based on the information contained in this report, it is clear that Palmer knew the correct spelling of Thurmond's name and the substance of her criminal record. Thus, Palmer could have obtained, and in fact, did obtain, this evidence prior to trial through the exercise of reasonable diligence, and the trial court did not err in denying his motion to reconsider.

## II. Brady Violation

Palmer also contends that the prosecutor in this case violated Brady v. Maryland, 373 U.S. 83 (1963), "by not providing [him] with information that the complaining witness was lying when she testified at trial that she had never been convicted of a crime and that she had a driver's license for a state where she did not live with a name that was not hers." This argument is without merit.

Though "a defendant does not have a general constitutional right to discovery in a criminal case," the prosecutor "is required to provide a defendant with exculpatory evidence, including evidence which impeaches the credibility of a prosecution witness." Goins v. Commonwealth, 251 Va. 442, 456, 470 S.E.2d 114, 124 (1996). "'In order for a defendant to establish a Brady violation, he must demonstrate that the undisclosed evidence was exculpatory and material either to the issue of guilt or to the issue of punishment.'" Id. (quoting United States v. Agurs, 427 U.S. 97, 109-10 (1976)). "'Exculpatory evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. A 'reasonable probability' is one which is sufficient to undermine confidence in the outcome of the proceeding.'" Wilson v. Commonwealth, 25 Va. App. 263, 270, 487 S.E.2d 857, 861 (1997) (quoting Bowman v. Commonwealth, 248 Va. 130, 133, 145 S.E.2d 110, 112 (1994)).

However, "'where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled

to the benefit of the <u>Brady</u> doctrine.'"  <u>United States v. Roane</u>, 378 F.3d 382, 402 (4th Cir. 2004) (quoting <u>United States v. Wilson</u>, 901 F.2d 378, 381 (4th Cir. 1990)).  Furthermore, "information *actually known* by the defendant falls outside the ambit of the <u>Brady</u> rule."  <u>Id.</u> (emphasis added).  This is because "[t]he rationale underlying <u>Brady</u> is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government."  <u>United States v. LeRoy</u>, 687 F.2d 610, 619 (2d Cir. 1982).

The evidence in the record demonstrates that Palmer knew both the correct spelling of Thurmond's name and the substance of her criminal record prior to trial.  A private investigator, hired by Palmer, obtained Thurmond's criminal record nearly a month before trial.  That record contained Thurmond's 1994 convictions for disorderly conduct and reckless driving.[4]  It is important to note that "[t]his court is firmly committed to the view that proof of conviction of a misdemeanor involving moral turpitude is admissible to impeach the credibility of a witness, and that conversely, proof of conviction of a misdemeanor not involving moral turpitude is *inadmissible* for that purpose."  <u>Parr v. Commonwealth</u>, 198 Va. 721, 724, 96 S.E.2d 160, 163 (1957) (citing <u>Bell v. Commonwealth</u>, 167 Va. 526, 189 S.E. 44 (1937); <u>Burford v. Commonwealth</u>, 179 Va. 752, 20 S.E.2d 509 (1942); <u>Taylor v. Commonwealth</u>, 180 Va. 413, 23 S.E.2d 139 (1942); <u>Chesapeake & Ohio Ry. Co. v. Hanes, Adm'r.</u>, 196 Va. 806, 86 S.E.2d 122 (1955); <u>Pike v. Eubank</u>, 197 Va. 692, 90 S.E.2d 821 (1956) (emphasis added).  "'Misdemeanor crimes of moral turpitude are limited to those crimes involving lying, cheating and stealing, including making a false statement and petit larceny.'"  <u>Johnson v. Commonwealth</u>, 41 Va. App.

---

[4] Thurmond had a disposition of "prayer for judgment continued," after pleading guilty to both disorderly conduct and reckless driving.  Under North Carolina law, a guilty plea followed by a prayer for judgment continued is deemed a conviction.  <u>See</u> <u>State v. Sidberry</u>, 448 S.E.2d 798, 800-01 (N.C. 1994).

37, 43, 581 S.E.2d 880, 883 (2003) (quoting Newton v. Commonwealth, 29 Va. App. 433, 448, 512 S.E.2d 846, 853 (1999) (citation omitted)).  Disorderly conduct and reckless driving are not crimes involving lying, cheating or stealing.  Thus, evidence of Thurmond's convictions for those offenses would not have been admissible to impeach her testimony.

Furthermore, during his cross-examination of Thurmond, Palmer inquired about a 1996 charge of "larceny by changing price tag."  That information was also contained in the investigator's report.  In fact, the record demonstrates that the information of Thurmond's criminal record and reputation was not only available to Palmer, but was *actually known* to him prior to trial.  Therefore, when Thurmond testified, "I've never been convicted of any crimes, sir," Palmer had actual knowledge that she was not telling the truth.  Thus, that information "falls outside the ambit of the Brady rule."[5]  Roane, 378 F.3d at 402.

Affirmed.

---

[5] Moreover, Palmer failed to establish that this "undisclosed evidence" was material.  The mere fact that Thurmond possessed a Virginia driver's license with the name "Thurman" and had a prior conviction for disorderly conduct does not render her testimony so inherently incredible as to "'undermine confidence in the outcome of the proceeding.'"  Wilson, 25 Va. App. at 270, 487 S.E.2d at 861 (quoting Bowman, 248 Va. at 133, 445 S.E.2d at 112).