Alexandria

WILLIAM DOUGLAS CARTER

v.

COMMONWEALTH OF VIRGINIA

No. 1383-88-4

Decided June 19, 1990

COUNSEL

Blair D. Howard (Howard, Leino & Howard, P.C., on brief), for appellant.

Robert B. Condon, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—William Douglas Carter (appellant) appeals from judgments of the Circuit Court of Loudoun County (trial court), which approved his jury convictions for malicious wounding and use of a firearm in the commission of a felony, and denied his post-trial motions for a new trial.[1] Appellant alleges that the trial court erred when it refused to grant him a new trial based on (1) after-discovered evidence, and (2) the alleged failure of the Commonwealth to provide him with exculpatory evidence requested in a pretrial motion.

Upon familiar principles we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Evans v. Commonwealth*, 215 Va. 609, 612, 212 S.E.2d 268, 271 (1975). A brief review of the facts presented at the trial is necessary to an understanding of the post-trial issues. Appellant and Carole Carter (Carole) were husband and wife. A divorce suit had been filed giving rise to a bitter contest. Prior to their separation they lived on a tract of land known as Greenwood Farm (the farm). After the suit was filed they continued to live at the farm but in separate dwelling houses.

On July 31, 1987, at 2:30 a.m. Carole was shot in the neck. She identified appellant as her assailant and testified that he used a .38 caliber pistol to inflict the wound.

Appellant denied that he shot Carole and relied upon an alibi defense. He testified that he left the farm at 11:30 p.m. on July 30 and drove to New York, arriving in the Albany area at 9:45 a.m. the following day. On July 31 at 3:00 p.m., a New York sheriff, John Demartino, interviewed appellant in Saratoga County. Appellant told Demartino that earlier that day in a telephone call to his brother in Texas he learned that Carole had been shot with a .38 pistol. Appellant's knowledge that Carole had been shot with a .38 caliber pistol became a focal point in the jury trial.

---

[1] This appeal does not involve a challenge to the sufficiency of the evidence to support the convictions.

Shortly after the interview, Demartino returned and arrested appellant pursuant to a warrant which had been issued by the Commonwealth and teletyped to New York. Appellant was taken to the Saratoga County jail where he was processed, required to empty his pockets and remove his clothes. Demartino observed several "heavy" scratches on appellant's right shoulder, upper arm and rib cage. A smaller scratch was on his face. The scratches appeared to Demartino to be "fresh marks," with redness and without scabs. At trial, Carole testified that she scratched and pushed her assailant as hard as she could because she was determined to leave some marks on him to show who had shot her.

During the trial, appellant's brother testified that at approximately 6:30 to 6:40 a.m. on the morning Carole was shot, he received a telephone call from Rebecca Elgin, a friend of appellant, who advised him that Carole had been shot with a .38 pistol, and that he had relayed this information to appellant in a telephone conversation later that morning.

Elgin testified that when Loudoun County Sheriff Isom came to see her at 8:00 a.m. on the morning of the shooting she "believed" that Isom told her that Carole had been shot by a .38, and that she had relayed that information to appellant's brother. In rebuttal, the Commonwealth called Isom to testify. He stated that he went to Elgin's house at 8:00 a.m. on the day of the shooting but did not reveal any of the details of the investigation. He further testified that his only purpose in going to see Elgin was to ascertain where appellant might be; that no one at that time had told him whether a handgun was used to inflict the wound or its caliber; and that he did not tell Elgin anything concerning the shooting but only "asked her questions."

In support of his post-trial motions, appellant filed an affidavit sworn to by Jeffrey B. Rice, one of his attorneys. The affidavit stated that Deputy Sheriff Morris acknowledged that early on the day of the offense he learned that Carole had been shot by a .38 caliber pistol, and that he had given this information to Lt. Webb; that Lt. Webb told Rice that he had related to Isom "the information . . . Morris . . . obtained at the Aldie Firehouse, that being that [Carole] had said she was shot with a handgun"; that Isom's testimony came as a complete surprise to the defense; that the defense could not have anticipated Isom's testimony from the information supplied by the Commonwealth in response to his re-

quest for exculpatory evidence; and that the information contained in the affidavit was not known to him prior to the trial. The affidavit did not disclose why, with due diligence, the information appellant relies on as after-discovered evidence could not have been discovered before the trial with the exercise of the same effort used after the trial.

On August 8, 1988, a hearing was held in the trial court on appellant's post-trial motions. Appellant presented evidence through Deputy Sheriff Morris and Attorney Rice. Morris related that he had filed a report which disclosed that two women who were living with Carole told him that Carole had reported that she had been shot with a .38 pistol, and that sometime that day (he did not know when) he relayed that information to Lt. Webb of the Loudoun County Sheriff's Department. Morris further testified that he saw Isom that morning but had no conversation with him. In addition, Morris testified that prior to the trial he talked to Mr. Howard,[2] one of appellant's attorneys, and told him everything that was in his report.

Rice testified that after the trial, in an interview with Webb, he learned that Morris had informed Webb that the two women had advised Morris of the caliber and type gun that had been used. Rice further testified that Webb told him that "what he had learned from Deputy Morris he had relayed to Isom." The record does not disclose a time when Isom learned the type and caliber of the gun. No further direct evidence was offered by appellant at the hearing on his motions.

The Commonwealth called Webb and Isom. Webb testified that to the best of his recollection Morris did not tell him the caliber or type of gun used, and that the weapon was not recovered "until some considerable time later." He told Isom that the victim was female, sustained a gunshot wound to her head, that it appeared serious, possibly mortal, that her assailant was known to her, and that they did not presently know where he might be found. Webb further stated that while he "related the pertinent facts of the case" to Isom he had no recollection of Morris telling him the type or caliber of the weapon used.

---

[2] Appellant's attorneys admitted that they had interviewed Morris prior to the trial and had received a copy of his report in advance of that trial.

Sheriff Isom stated that Webb had relayed to him the basic information concerning the shooting but that he was told only that "the victim had been shot." When pressed to answer "one way or the other" as to whether Webb had identified the type or caliber of the gun before he went to Elgin's house, he replied: "I'd say no." He agreed with Morris' testimony that he had no conversation with Morris prior to talking with Elgin at her house. He added that when he talked with Elgin at her house he did not "reveal any of the details (of the investigation) at all"; that under no circumstances would he go into detail with a witness in cases of this kind; and that his only purpose in talking with Elgin was "as a possible source of information" as to where appellant might be found.

## I. The After-Discovered Evidence

Under limited circumstances a new trial may be granted for the purpose of introducing additional evidence not employed at the first trial. C. Friend, *Law of Evidence in Virginia* § 7 (3d ed. 1988). Four general principles governing the granting of motions for new trials on the ground of after-discovered evidence must be met before a new trial will be granted.

Motions for new trials based on this ground are addressed to the sound discretion of the trial judge and are awarded with great reluctance and with special care and caution. The evidence must (1) appear to have been discovered since the trial; (2) be such that in the exercise of reasonable diligence on the part of the applicant it could not have been secured at the former trial; (3) not be merely cumulative, corroborative or collateral; and (4) be material in its objects, and such as on another trial ought to produce opposite results on the merits.

A new trial will not be granted on the ground of after-discovered evidence when the evidence is known before the trial but omitted simply because witnesses were thought to be adverse.

*Reiber v. Duncan,* 206 Va. 657, 663, 145 S.E.2d 157, 162-63 (1965)(citations omitted); *see also Odum v. Commonwealth,* 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983). The party seeking a

new trial on the basis of after-discovered evidence has the burden to prove the requirements set forth in the general rule. Courts may properly require that it shall be made to appear affirmatively that the new evidence tending to show the mistake or the perjury exists beyond question and is not a mere matter of belief or opinion. *Powell v. Commonwealth*, 133 Va. 741, 755, 112 S.E. 657, 661 (1922). Before setting aside a verdict, the trial court must have evidence before it to show in a clear and convincing manner "as to leave no room for doubt" that the after-discovered evidence, if true would produce a different result at another trial. *Id.* at 756, 112 S.E. at 661.

We have reviewed the affidavit and the record and find that the evidence produced by appellant fails to meet those tests. In *Fulcher v. Whitlow*, 208 Va. 34, 155 S.E.2d 362 (1967), the Court held:

We focus our attention upon the application of the second of the quoted rules, that is, that a party who seeks a new trial on the ground of after-discovered evidence must show that he used reasonable diligence to secure such evidence before the earlier trial. It is not sufficient merely to say that the evidence could not have been discovered by the use of due diligence. *The applicant for a new trial must set forth in affidavits facts showing what his efforts were to obtain the evidence and explaining why he was prevented from securing it.*

*Id.* at 38, 155 S.E.2d at 365 (emphasis added). We have examined the affidavit and find only that it asserts that Webb's statement was not known to the defense prior to the trial; that Isom's testimony was a complete surprise to the defense based on its own witnesses; and that the defense could not have anticipated Isom's testimony. Prior to the trial, appellant had all the information available to him that he had post trial. If he had been diligent he could have obtained the same information before the trial. He did not in his affidavit or in any evidence produced at the post-trial hearing explain how he was prevented from talking with Webb and Isom prior to the trial. Appellant knew that Elgin would testify concerning the source of her information for the caliber and type of weapon that had been used. No reason is shown for the defense's failure to seek to corroborate Elgin's assertion

that the gun description came from Isom. Appellant was aware that he had told the New York authorities that he knew the caliber and type gun alleged to have inflicted Carole's wound. Appellant knew he would have to prove the source of his information to prevent doubt from being cast on his account of where he was when the offense occurred, and that in proving the source of his information he would have to trace various sources back to Isom. Appellant has not demonstrated that, in the exercise of reasonable diligence, the evidence he now asserts as the basis to obtain a new trial could not have been obtained by him for use at the trial. Thus, he has failed to meet the second requirement of the four-part test.

■ Whether a new trial will be granted is a matter committed to the sound discretion of the trial court and its decision will not be reversed except for an abuse of discretion. The record does not disclose when Morris told Webb how he obtained the description of the gun. Webb denied telling Isom that the gun was a .38 caliber weapon and, in fact, stated that he had no recollection of Morris ever giving him that information. Isom denied describing the gun to Elgin or giving her any details of the investigation. The only substantial change in the trial testimony comes from Rice, one of appellant's attorneys, and his affidavit is not sufficient to show an abuse of discretion by the trial court. Moreover, considering the total evidence in the trial record, the alleged after-discovered evidence, if it were presented to a new trier of fact, would not produce an opposite result on the merits.

For the reasons stated, we hold that the trial court did not err in refusing to grant a new trial based on after-discovered evidence.

## II. *The Exculpatory Evidence*

■ In his argument on the issue that evidence was withheld unconstitutionally, appellant refers to no additional fact that was allegedly withheld which could be considered as exculpatory. We have held on the first issue that the alleged after-discovered evidence was not such that if true would probably cause an opposite result in a new trial on the merits. For a new trial to be granted based on the failure to disclose exculpatory evidence, the non-disclosed evidence must be material so as to create "a reasonable probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

We have reviewed the trial record, Rice's affidavit, and the record of the hearing to set aside the verdicts, and find that they contain credible evidence to support the finding of the trial court. Even if we viewed the evidence most favorable to appellant, we would find only that Isom *may* have received a description of the gun but we still would not know when it was transmitted to him. This record fails to support an allegation that the Commonwealth possessed exculpatory evidence not transmitted to the defense. The record likewise fails to support an inference that had the alleged exculpatory information been disclosed, the result of the proceedings would have been different.

Accordingly, for the reasons stated, the judgments of the trial court are affirmed.

*Affirmed.*

Coleman, J., and Duff, J., concurred.