COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Bumgardner
Argued at Salem, Virginia


KENNETH W. BARKSDALE
                                    MEMORANDUM OPINION* BY
v.   Record No. 3141-96-3      JUDGE RUDOLPH BUMGARDNER, III
                                         JUNE 16, 1998
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                  William N. Alexander, II, Judge

          Glenn L. Berger (Curtis L. Thornhill;
          Berger & Thornhill, on brief), for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (Richard Cullen, Attorney General, on
          brief), for appellee.



     Kenneth W. Barksdale was charged with malicious wounding,

use of a firearm during the commission of malicious wounding,

shooting from a motor vehicle, and shooting at an occupied

vehicle.  A jury convicted him of each charge.  At the sentencing

hearing, the defendant moved to set aside the verdict and grant a

new trial based on after acquired evidence.  He appeals the

denial of the motion.  Finding no error, we affirm the

convictions.

     Sonya Covington, Nicole Cook, and Kevin Logan were riding in

a car when a Toyota Cressida pulled up beside them.  The

defendant was in the rear of the Toyota with Terrence Whitehead.

After dropping back for a while, the Toyota again pulled beside

Covington's vehicle and someone yelled for it to pull over.  When

---

     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

she did not, two shots were fired from the Toyota into the Covington vehicle hitting Kevin Logan who was sitting in the back seat.

The Commonwealth's evidence that came primarily from the persons riding in the Covington vehicle identified the defendant as the shooter.  There were differences in the details of what various witnesses saw, what they remembered, and how they described the events.  The defense evidence showed that Whitehead, not the defendant, fired the shots.

After the jury rendered its verdict but before the trial judge entered final judgment, the defendant moved for a new trial based on after acquired evidence.  The trial court held a hearing at which two witnesses testified for the defense.  Mickey Williams testified that he talked with Whitehead while both were in jail.  Whitehead told him that he had done the shooting not the defendant.  This conversation took place after the defendant's trial.

Paul Dalton was the second witness for the defense.  He testified that while he was in jail he overheard a conversation through a vent between Whitehead and his roommate, Willie Young. He recognized Whitehead's voice and heard him tell Young that he, not the defendant, had fired the gun.  The defendant testified that he did not know any of this information before his trial. The Commonwealth called Terrence Whitehead to the stand.  He denied that he fired the shots and denied ever telling anyone in

jail that he had been the shooter. He testified that before the trial he had talked with the defendant's trial attorney and told him that the defendant had done the shooting. The prosecution also called Willie Young. He denied having the conversation that Dalton said he overheard.

On appeal, we view the evidence in the light most favorable to the Commonwealth with all reasonable inferences deducible from it. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

The party seeking a new trial based upon a claim of newly discovered evidence has the burden of establishing that the evidence 1) was discovered after trial; 2) could not have been obtained prior to trial through the exercise of due diligence; 3) is not merely cumulative, corroborative, or collateral; and 4) is material, such as should produce an opposite result on the merits at another trial. See Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983); Carter v. Commonwealth, 10 Va. App. 507, 512-13, 393 S.E.2d 639, 642 (1990). The granting of such a motion is not favored, considered with special care and caution, and awarded with great reluctance. See Odum, 225 Va. at 130, 301 S.E.2d at 149.

Whether a new trial will be granted is a matter committed to the sound discretion of the trial court, and its decision will not be reversed except for an abuse of discretion. See Carter, 10 Va. App. at 514, 393 S.E.2d at 642. Before granting a new

-3-

trial, the trial court must have clear and convincing evidence that leaves "no room for doubt" that the after acquired evidence if true would produce a different result. See Carter, 10 Va. App. at 513, 393 S.E.2d at 642; see also Odum, 225 Va. at 131, 301 S.E.2d at 149.

We have reviewed the record and find that the evidence produced by appellant fails to meet the last requirement for setting aside a verdict based upon after-discovered evidence. Based upon the original evidence, the jury found the appellant guilty of the crime charged beyond a reasonable doubt. The victims testified that the appellant had the weapon and that they saw him lean over as if to shoot. The appellant's newly discovered evidence that Whitehead was the criminal agent would not have produced a different result on retrial. While the evidence, if believed, was material, the trial court properly could find that it did not present the reasonable probability that had the evidence been disclosed to the jury it would have produced an opposite result. The new evidence does not bear upon the validity of the original evidence, and is cumulative of evidence presented at trial.

This case is distinguished from Hines v. Commonwealth, 136 Va. 728, 117 S.E. 843 (1923). In Hines, there were many material circumstances, as well as an alleged confession, that tended to implicate a third party which were not presented at trial. Here, the jury considered evidence that Whitehead was a back seat

-4-

passenger and the trigger man.  The appellant has failed to affirmatively show that the evidence of an alleged confession by witnesses who are jailhouse inmates would change the verdict at a subsequent trial.

In addition, unlike in Odum, there is no confession.  There is only testimony from two convicted felons who allege Whitehead admitted committing the crime for which appellant was convicted.  There is great reluctance to grant appellant's motion "because of the obvious opportunity and temptation that arises for fabrication of such evidence."  Mundy v. Commonwealth, 11 Va. App. 461, 481, 390 S.E.2d 525, 536, aff'd, 399 S.E.2d 29 (1990) (en banc), cert. denied, 502 U.S. 840 (1991) (motion denied because no evidence of due diligence was presented).

Holding that there was no abuse of discretion in denying the appellant's motion for a new trial on the grounds of newly discovered evidence, we affirm.

Affirmed.

Benton, J., dissenting.

I would hold that the trial judge erred in refusing to grant Kenneth Barksdale a new trial.

I.

The evidence at trial proved that on the afternoon of March 14, 1995, Sonya Covington was driving a Honda automobile. Nicole Cook was in the front passenger seat. Kevin Logan was seated in the back. A Toyota driven by Tim Dodson began to follow the Honda. Tina Davis was in the front passenger seat of the Toyota. In the back, Barksdale was seated behind the driver, and Terrence Whitehead was seated behind Davis. When the Toyota drove beside the Honda, someone yelled for Covington to stop. As Covington continued to drive, an occupant of the Toyota twice fired a gun through the rear passenger side window at the Honda. Logan was shot in his left arm.

All the occupants of the Honda testified during the Commonwealth's case-in-chief. Covington, the driver of the Honda, testified that she saw Barksdale, who was sitting behind the driver, reach down and come up with a gun in his hand. She "scooted down" in her seat and heard two gunshots. However, she did not see who fired the gun. Cook, who was seated in the passenger's seat of the Honda, testified that she saw Barksdale lean over the person sitting on the right side and shoot through the rear right passenger side window. Cook admitted that she did not name Barksdale as the shooter either when she gave a

statement to police the day after the incident or when she testified at the trial of Dodson, the driver of the Toyota.

Logan testified that before he was shot he saw both Barksdale and a dark-skinned man, who he did not know, in the back seat of the Toyota. Barksdale was sitting behind the driver. Logan also testified that he saw the gun but could not tell who had the gun. However, during Logan's testimony, the Commonwealth stipulated that Logan had testified at Barksdale's preliminary hearing that he saw a "dark skinned guy with a gun" before he ducked and was shot. Logan also admitted that he had testified earlier at Dodson's trial that Barksdale or the other passenger had the gun.

Davis, who was seated in the passenger's seat of the Toyota, and Dodson, the driver of the Toyota, testified for the defense. Davis testified that Whitehead shot the gun. She said she knew he shot the gun "[b]ecause . . . he was behind [her], and that's where the gun shot came from." She testified that after the shooting, Whitehead told the driver to turn around and return to Altavista. Dodson asked Whitehead "why was he shooting."

Dodson testified that Whitehead was sitting in the back right side passenger seat. He saw Whitehead reach out the window and twice shoot the gun. He also testified that Whitehead aimed the gun at him after the shooting and told him to drive to Altavista. At his own trial, Dodson had testified that he assumed "that [Whitehead] shot [at] the car because when [Dodson]

pulled over on the side of the road to try to figure out what was going on [Whitehead] had the weapon."

Based upon this testimony, the jury convicted Barksdale. After the jury's verdict and before sentencing, Barksdale filed a motion for a new trial based on after-discovered evidence that Whitehead had confessed to the crime.

At the hearing on Barksdale's motion for a new trial, Mickey Williams testified that Whitehead, with whom he shared a cell in jail, told him two or three times "that [Whitehead] was the one that done the shooting, and since . . . [Barksdale] already got found guilty of it, [Whitehead] was just going to let . . . everybody keep thinking that."

Paul Dalton testified that he heard Whitehead speaking in the jail to Dalton's cell mate. Whitehead said "he did do the shooting" and that Barksdale "was going down for it and [Whitehead] won't 'cause they had no evidence against him." Dalton also heard Whitehead say that Whitehead bought the gun and that Whitehead pulled the trigger.

Dalton's cell mate denied that Whitehead talked to him about the shooting Barksdale was convicted of committing. Whitehead also denied being the shooter and denied making any of these statements. However, contrary to every witness who testified at trial, Whitehead testified that he was sitting in the car behind the driver on the day of the shooting.

II.

The following four requirements must be met for a new trial to be granted upon a claim of after-discovered evidence:

> that the evidence (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983).

The majority holds that the evidence produced at the post-trial hearing did not meet the requirements for after-discovered evidence because it was merely cumulative and corroborative to that of other witnesses and "would not have produced a different result."  I disagree.

(A)

Although Whitehead's confession corroborated the testimony of Davis that Whitehead, rather than Barksdale, was the shooter, Whitehead's confession was by its nature highly probative and of a wholly different quality than testimony of a third person implicating Whitehead.  In discussing the impact of a confession on a jury's verdict, this Court recently stated:

> A confession is like no other evidence. Indeed, "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct.  Certainly, confessions have

-9-

> profound impact on the jury, so much so that
> we may justifiably doubt its ability to put
> them out of mind even if told to do so."

Quinn v. Commonwealth, 25 Va. App. 702, 719-20, 492 S.E.2d 470,
479 (1997) (citation omitted). Thus, I would hold that
Whitehead's confession was more than merely cumulative or
corroborative of the defense's other evidence and was highly
probative on the issue of Barksdale's guilt.

(B)

I also disagree with the majority's conclusion that
Barksdale did not prove the new evidence would probably affect
the outcome of a new trial. I believe that if the jury had heard
and believed this new evidence, that Whitehead confessed to
committing the crime, a different result would have necessarily
occurred. See Hines v. Commonwealth, 136 Va. 728, 750-51, 117
S.E. 843, 849 (1923). Furthermore, Whitehead's testimony that he
was sitting behind the driver was contrary to every witness who
testified at trial. Certainly, the jury would have considered
that testimony as a transparent deception by Whitehead to remove
himself from the place where the gun was fired. This evidence
"is material, and such as should produce opposite results on the
merits at another trial." Odum, 225 Va. at 130, 301 S.E.2d at
149.

In Hines, the Supreme Court of Virginia reversed the trial
judge's refusal to grant a new trial when after-discovered
evidence indicated that someone else had confessed to the crime

for which the accused had been convicted.  The Court stated the following:

> The jury found upon the original evidence that he was guilty beyond a reasonable doubt, and as they were the sole judges of the weight and credibility of the testimony, their verdict thereon could not be disturbed. But the vital facts upon which that verdict was based were disputed, and this new evidence, if they had heard and believed it, would necessarily have produced a different result.  We do not undertake to say what weight a jury would give to the new evidence, but it certainly ought to change the result if it is worthy of belief, and <u>whether it is worthy of belief is a question which ought to be settled, not by the court, but by a jury</u>.

<u>Id.</u> at 750-51, 117 S.E. at 849-50 (emphasis added).

This is not a case which "presents a verdict based on uncontradicted, corroborated and reaffirmed eyewitness testimony" or which "presents after-discovered evidence that is self-contradictory, perjured at least in part, and plainly unworthy of belief [or that is] insufficient, as a matter of law, to frame a legitimate question for jury determination."  <u>Hopkins v. Commonwealth</u>, 20 Va. App. 242, 252, 456 S.E.2d 147, 151 (1995) (<u>en</u> <u>banc</u>).  Nor is it "the latest in a series of inconsistent statements."  <u>Odum</u>, 225 Va. at 131, 301 S.E.2d at 149.  While two of the Commonwealth's witnesses testified at trial that they saw Barksdale with the gun, their testimony was not without contradiction.  Cook's testimony clearly establishes that she did not say Barksdale committed the crime either when she gave a statement to the police the day after the incident or at Dodson's

-11-

trial. Covington said she saw Barksdale with a weapon; however, she did not see Barksdale fire the weapon. At Barksdale's trial, Logan testified that he could not tell who had the gun. At Dodson's earlier trial, Logan could only say that either Barksdale or another man had the gun. The testimony of these witnesses was also contradicted by the testimony of the witnesses for the defense who stated that Whitehead fired the gun.

Moreover, the after-discovered evidence was not "self-contradictory" or "plainly unworthy of belief." Hopkins, 20 Va. App. at 252, 456 S.E.2d at 151. The testimony of the two prison inmates regarding Whitehead's confessions was consistent -- Whitehead was the shooter and he was allowing Barksdale to take the blame. Although the majority concludes that "there is no confession," the law is clear that "a 'confession' is generally defined as a statement admitting or acknowledging all facts necessary for conviction of the crimes at issue." Caminade v. Commonwealth, 230 Va. 505, 510, 338 S.E.2d 846, 849 (1986) (citation omitted). Whitehead's statement was a confession. See Hines, 136 Va. at 737-38, 117 S.E. at 845 (confession to third party). Moreover, the trial judge simply relied on the fact that the two witnesses were convicted felons in denying Barksdale's motion for a new trial. However, the witnesses' credibility, as well as the credibility of Whitehead's confession, were for the jury to resolve. See Hines, 136 Va. at 745, 117 S.E. at 848 ("[t]he truth of the admission itself, and the credibility of the

-12-

witness who undertakes to repeat the admission, must, like the truthfulness of all other testimony, address itself to and be settled by the jury").

If the jury did believe this new evidence, then the evidence would necessarily have changed the outcome of Barksdale's trial. Therefore, I would hold that the trial judge abused his discretion in refusing to grant Barksdale's request for a new trial, and I would reverse the decision and remand for a new trial.