COURT OF APPEALS OF VIRGINIA

Present: Judges Annunziata, Lemons and Senior Judge Hodges
Argued at Alexandria, Virginia

FARID SEDIQI

MEMORANDUM OPINION[*] BY
v.          Record No. 1550-97-4          JUDGE DONALD W. LEMONS
                                          JANUARY 12, 1999

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Donald M. Haddock, Judge

Joseph J. McCarthy (Delaney, McCarthy,
Colton & Botzin, P.C., on briefs), for
appellant.

Eugene Murphy, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Farid Sediqi appeals his conviction for aggravated malicious wounding, a violation of Code § 18.2-51.2. On appeal, he argues that the trial court erred in refusing to grant his motion for a new trial. Because we hold that the trial court committed no error, we affirm.

BACKGROUND

On September 2, 1996, Mohammad Riaz, the victim, left the home that he shared with his wife, Rubina Riaz, to meet his girlfriend, Najlah Sediqi, in the stairwell of her apartment building. Riaz testified that while he was seated with Najlah, he saw her two brothers, Farid Sediqi ("Farid"), the appellant, and Mohammad Haroon Sediqi, enter the stairwell and attack him

---

[*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

with steel pipes, 12 to 20 inches in length.  Riaz was struck in the head until he lost consciousness.  He sustained a total of 15 lacerations to his head and face that required more than 100 stitches.  The doctor who treated the victim testified that his upper body was "totally purple" across the back of his shoulders and neck.

The Sediqi brothers were tried together on February 4, 1997, without a jury.  At trial, Riaz was the only witness to identify the brothers as his attackers.  Rubina Riaz testified that she was aware of the relationship between her husband and Najlah and that she knew that her husband was on his way to meet her on the night of the attack.  Her testimony revealed that Rubina Riaz had two brothers who lived in Northern Virginia.  On February 5, 1997, the court found both Farid and his brother guilty of aggravated malicious wounding.

On May 29, 1997, the trial court heard the codefendants' joint motion for a new trial based on the claim of newly discovered evidence.  At the hearing, Abdullah John Allouzai ("John Allouzai") testified that he had spoken with Riaz on October 31, 1996.  John Allouzai admitted that he approached Riaz pursuant to a request by the "elderlies," leaders of the Afghan community in Northern Virginia.  John Allouzai stated that Riaz told him during their meeting that he had not seen the persons who had attacked him.  John Allouzai testified that Riaz told him that, although he had not actually seen his attackers, he thought

that it was Najlah's brother "because she was the only one who knew to meet me at the stairway." John Allouzai also testified that "when elderlies say something to you, you often -- 99.9 percent of the time you support that, and you listen to that." John Allouzai admitted that he suggested to Riaz that he accept a financial settlement from Farid and his brother.

At the same hearing on the joint motion, Jobib Allouzai, John Allouzai's brother and Riaz's friend, testified that Riaz "usually says that he knows who attacked him." Riaz testified at the hearing that John Allouzai approached him and suggested that the case should be settled out of court for money. Riaz stated further that he never told John Allouzai he had not seen the men who had attacked him. The court ruled that: (1) the Sediqis could have discovered John Allouzai's testimony through due diligence; (2) the evidence was not credible; and (3) it would not have affected the outcome of the trial.

<u>MOTION FOR A NEW TRIAL</u>

On appeal, Farid argues that the trial court erred in refusing to grant his motion for a new trial.

> Motions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance. . . . The applicant bears the burden to establish that the evidence (1) appears to have been discovered subsequent to trial; (2) could not have been secured for use at trial; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits

- 3 -

at another trial.

Stockton v. Commonwealth, 227 Va. 124, 149, 314 S.E.2d 371, 387 (1984) (citation omitted).

On March 27, 1997, at the first scheduled sentencing hearing, Farid and Mohammed Sediqi requested a continuance, alleging that they had discovered a new witness who could testify that Riaz had told different versions of who had attacked him. The court granted the continuance. On April 30, 1997, Mohammed Sediqi filed a Motion for a New Trial.[1] Farid adopted his brother's motion. On May 29, 1997, a hearing was held.

In its analysis of the motion for a new trial, the trial court did not state whether it found that John Allouzai's testimony was discovered subsequent to trial. The trial court did find that Farid failed to show that the evidence could not have been secured for use at his trial through the exercise of reasonable diligence.

> [A] party who seeks a new trial on the ground of after-discovered evidence must show that he used reasonable diligence to secure such evidence before the earlier trial. It is not sufficient merely to say that the evidence could not have been discovered by the use of due diligence. The applicant for a new trial must set forth in affidavits facts showing what his efforts were to obtain the evidence and explaining why he was prevented from securing it.

Yarborough v. Commonwealth, 15 Va. App. 638, 646, 426 S.E.2d 131,

---

[1] Mohammad Haroon Sediqui's appeal on the identical issue was denied by order of this Court dated March 20, 1998.

136 (1993) (citation omitted).

Farid maintains that he did not know John Allouzai prior to his trial. He argues that in order to secure this evidence for use at his trial, he would have had to interview "approximately 7,000 Afghan families in the Northern Virginia area alone." He contends that such efforts would have exceeded the scope of reasonable diligence.

However, John Allouzai met with Riaz in an attempt to settle the matter on October 31, 1996, three months prior to his trial. Farid concedes that his own father was present when the elders approached John Allouzai to request that he meet with Riaz. Under the circumstances, the trial judge was entitled to reject Farid's claim that he could not have discovered John Allouzai's testimony before his trial with the exercise of reasonable diligence. In addition, Farid failed to present evidence to the trial court setting forth his efforts to obtain the evidence, and explaining why he was prevented from obtaining it.

The nature of John Allouzai's testimony served to undermine Riaz's identification of the Sediqi brothers as his attackers. "However, newly discovered evidence which merely discredits, contradicts, or generally impeaches a witness is not a basis for granting a new trial." Mundy v. Commonwealth, 11 Va. App. 461, 481, 390 S.E.2d 525, 536 (1990). Because his testimony was intended only to impeach Riaz's testimony, the court correctly determined that it was an insufficient basis for granting a new

trial.

The trial court also found that the new evidence was not material. "Before setting aside a verdict, the trial court must have evidence before it to show in a clear and convincing manner 'as to leave no room for doubt' that the after-discovered evidence, if true would produce a different result at another trial." Carter v. Commonwealth, 10 Va. App. 507, 513, 393 S.E.2d 639, 642 (1990) (citation omitted). Here, the court weighed the evidence presented at the hearing, and determined that the outcome would not have been different if the evidence had been presented at trial.

At trial, Riaz positively identified Farid Sediqi and his brother as his attackers. The evidence showed that at the time of the beating, Riaz, a married man, was having a relationship with the Sediqi brothers' sister. At the hearing on the joint motion for a new trial, John Allouzai testified that Riaz told him that he could not positively identify his assailants. At the same hearing, Riaz again identified Farid and his brother as his attackers. Jobib Allouzai also testified that Riaz "says he knows who attacked him." Unlike Riaz, John Allouzai was not an eyewitness to the beating.

Although the trial judge denied the motion for a new trial, the court nonetheless treated it as a motion to reopen the evidence. The judge, as the fact finder in the first trial, considered the evidence, found that it was not credible, and

affirmed the conviction of the Sediqi brothers.  In summarizing

the "new" evidence presented at the hearing, the court stated,

> only [one] fellow who comes forward and says,
> well, on Halloween he told me that he didn't
> really see it, and this is in the posture of
> a negotiation to keep this thing under lid
> within the Afghan community and not to bring
> it before the civil authorities . . . [and] I
> don't believe it affects the outcome in any
> way, shape or form in the mind of this fact
> finder, who was, in fact, the fact finder in
> the trial.

Because we agree with the trial court that Farid Sediqi

failed to meet the requirements necessary to grant a new trial

based upon after-discovered evidence, we affirm his conviction.

<u>Affirmed</u>.